UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| TAMMY NICOLE BUCKNER, ) | Case No. 6:12-bk-04962-KSJ |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION GRANTING**
**THE DEBTOR'S MOTION TO STRIP LIEN**

Tammy Buckner, the Chapter 13 Debtor, owes Magnolia PD Property Association ("Magnolia") $5,757.17 in unpaid assessments.[1] The Debtor now seeks to strip off any lien held by Magnolia.[2] Because the Court finds the Debtor's undersecured first mortgage loan is an institutional mortgage as required to subordinate Magnolia's lien under the HOA declaration, the Debtor's motion to strip is granted.

The Debtor owns a home located in Sanford, Florida (the "Property"). On November 16, 2005, the Debtor entered into a mortgage loan with Fremont Investment & Loan, who later sold its interest to America's Servicing Company ("ASC"). The mortgage agreement lists Fremont Investment & Loan as "Lender," and MERS (Mortgage Electronic Registration Systems, Inc.) as "mortgagee," "acting solely as a nominee for Lender and Lender's successors and assigns."[3] The loan has an outstanding principal balance of $354,108, but the Debtor estimates the value of the Property is only $201,000.

---

[1] Doc. No. 17. Proof of Claim No. 6-1.
[2] Doc. No. 17.
[3] Doc. No. 22, Exhibit B at 1.

The Debtor filed a Chapter 13 bankruptcy on April 13, 2012, after which Magnolia filed a secured proof of claim in the amount of $5,757.17 for prepetition amounts due for unpaid HOA assessments, interest, late fees, administrative fees, attorney's fees and costs related to the Property.[4] On May 9, 2012, the Debtor filed her motion to strip Magnolia's proof of claim, arguing that, according to the undisputed estimate of the Property's value, ASC's loan is under secured, there is no equity in the Property to which Magnolia's subordinated lien can attach, and, therefore, Magnolia's lien is unsecured under § 506(a) and should be stripped off under § 506(d).[5]

According to Paragraph 12 of the Declaration of Covenants, Conditions, and Restrictions of the Magnolia Park Homeowners' Association (the "Declaration"), Magnolia holds a secured lien against the Property for the $5,757.17 in unpaid assessments.[6] However, Paragraph 20 of the Declaration *expressly subordinates* Magnolia's lien "to the lien of any 'institutional mortgage.'"[7] Magnolia's Declaration does not define institutional mortgage, but Article I, Section L of the Declaration defines "Institutional Lender" or "Institutional Mortgagee" as:

> A bank, savings and loan association, insurance company, mortgage company, real estate investment trust, pension fund, pension trust, Federal National Mortgage Association, Federal Home Loan Mortgage Association, or any other generally recognized institutional-type lender or its loan correspondent, or any agency of the United States Government, the State of Florida, or the County of Seminole or the City of Sanford.

Magnolia does not object to the value the Debtor attributes to the property or to the amount of the first mortgage owed to ASC but argues that because the mortgage agreement lists

---

[4] Proof of Claim No. 6-1.
[5] Doc. No. 17.
[6] Paragraph 12 states:
    The Association has a lien on each Lot to secure the payment of assessments. The claim of lien shall secure all unpaid assessments which are due and which may accrue subsequently to the recording of the claim of and prior to the entry of a certificate of title…
[7] Doc. No. 22 at 7.

MERS as the "mortgagee,"[8] ASC's mortgage is not an institutional mortgage, Magnolia's lien therefore is not subordinate and may not be stripped.[9]  Alternatively, Magnolia avers the rights under the mortgage do not transfer to successors or assignees and, therefore, ASC's interest is inferior to Magnolia's because the Declaration only prioritizes the original lender's claim, if at all.  Lastly, Magnolia argues its lien should not be stripped because the Declaration prevents it, pointing to the provision that preserves an HOA lien when the Property is sold.[10]

Consistent with the Court's ruling in *In re Jimenez,*[11] if Magnolia holds a superior interest to ASC, Magnolia has an over secured claim in the full allowed amount of $5,757.17.  But if Magnolia's claim is inferior to ASC's, Magnolia's claim is wholly unsecured, and Magnolia will be treated as an unsecured creditor under § 506 and its lien will be stripped.

Magnolia's first argument is that the mortgage is not institutional because MERS is listed as "mortgagee" in the mortgage, and MERS therefore is not an institutional mortgagee as defined in the Declaration.  Other than the Declaration, Magnolia cites no other support for this position.

Neither party disputes that MERS holds *only* legal title to the ASC's interest in the mortgage.  The mortgage agreement expressly provides:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in the Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assign) has the right to exercise any or all of those interest, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of the Lender, but not limited to, releasing and canceling this Security Instrument.[12]

---

[8] Doc. No. 22 at 5–6.
[9] Doc. No. 22.
[10] 11 U.S.C. § 506. *See In re Gloster*, 459 B.R. 200, 206 (Bankr. D.N.J. 2011) (citing *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S. Ct. 2106, 124 L.Ed.2d 228 (1993) for the proposition that the Bankruptcy Code and applicable governing precedent permit the strip-off of a junior claim after the application of § 506(a) determines that the claim is wholly unsecured).
[11] 472 B.R. 106 (Bankr. M.D. Fla. 2012).
[12] Doc. No. 22, Exhibit B at 3

The Court finds that the mere fact that MERS is not specifically defined as an institutional mortgagee does not affect the loan's status as an institutional mortgage. By all accounts, the loan originally was made by Fremont Investment & Loan. Fremont unquestionably qualifies as an institutional lender. Similarly, Fremont would qualify as an institutional mortgagee in connection with the mortgage issued in connection with this loan. This is all that is required under Magnolia's Declaration and Fremont is an institutional lender as defined in the Declaration. Fremont generally is recognized as a federally insured, state-chartered, institutional mortgage company.[13] The mortgage is federally regulated by Fannie Mae and Freddie Mac, recognizes Fremont as "Lender," and grants all rights and remedies to Fremont and Fremont's successors and assigns.[14] ASC, as the assignee of Fremont's interest in the note and mortgage, continues to hold all equitable rights under the mortgage; MERS has only a legal interest as nominee.

No credible argument exists that the mortgage is *not* an institutional mortgage simply because MERS is listed as a mortgagee and has legal rights to enforce the note on ASC's behalf. MERS, a wholly-owned subsidiary of MERSCORP, operates as a national electronic registry that tracks the beneficial ownership interests and servicing rights associated with residential mortgages.[15] Mortgage lenders, loan servicers, law firms, title companies, banks, and insurance agencies, all institutional lenders by Magnolia's own definition, become participating "members" of MERS by paying annual fees and consenting to MERS' rules, terms and conditions.[16] To effectuate this arrangement, note holders grant MERS an equitable interest in their mortgages to

---

[13] *See MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 896 (N.D. Ill. 2000) (stating "federal banking laws permit federally insured state-chartered institutional lenders such as Fremont").

[14] Doc. No. 22, Exhibit B at 11 (stating "The Covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender.").

[15] *In re MERSCORP Inc. and the Mortgage Electronic Registration Systems, Inc., Reston, Virginia*, 2011 WL 6941536 (O.C.C.) (April 13, 2011).

[16] *Culhane v. Aurora Loan Services of Nebraska*, 826 F. Supp. 2d 352, 368 (D. Mass. 2011).

allow MERS to track and enforce the security agreements on the members' behalf.[17] MERS' standing as mortgagee and agent has no bearing on whether the lender itself is an institutional lender under Paragraph 20 of the Declaration.

The cases Magnolia lists where courts have given HOA liens priority over first mortgages are factually inapplicable to this case. In *Hammocks Community Association*, the court prioritized the HOA lien because the mortgage did not meet the stated requirement of having a ten-year amortization.[18] For the same reason, the court in *Galloway Homes Association* found the HOA liens for unpaid assessments were superior to the first mortgage lien.[19] And, in *Association of Ponciana Villages*,[20] the court elevated the HOA's lien over the first mortgage lien because the limited subordination exception in the HOA declaration, that the loan be made by FDIC insured institutions or a specific lender, were not met. None of these cases apply here, where the prerequisite to ASC's priority is simply that it holds a mortgage issued by an institutional lender.

Therefore, the Court finds the mortgage made to Fremont and later assigned to ASC is an institutional mortgage. For public policy reasons, this court is loath to accept an interpretation of the law that has the effect of subordinating institutional mortgages behind HOA liens solely because the lender solicits the services of a third party tracking agent and servicer.

In addition, the Court declines to accept Magnolia's argument that ASC is not entitled to lien priority because ASC was not the first mortgage lender. Paragraph 20 of the Declaration states that Magnolia's liens for assessments "shall be subordinate to the lien of *any* institutional mortgage." The Debtor specifically conveyed her interest in the Property to MERS (solely as

---

[17] See *Taylor v. Deutsche Bank Nat. Trust Co.,* 44 So. 3d 618, 623 (Fla. Dist. Ct. App. 2010).
[18] *New York Life & Annuity v. Hammocks Comm. Ass'n, Inc*., 622 So.2d 1369 (Fla. 3d Dist. Ct. App. 1993).
[19] *Galloway Glen Homes Ass'n Inc. v. Umlic Six Corp.,* 717 So.2d 592 (Fla. 3d Dist. Ct. App. 1998).
[20] *Association of Poinciana Villages v. Avatar Properties. Inc*., 724 So.2d 585 (Fla. 5th Dist. Ct. App. 1998)

nominee for Lender *and Lender's successors and assigns*) and to the successors and assigns of MERS.[21] An institutional mortgage such as this one does not lose its status upon assignment.

In any event, ASC is a division of Wells Fargo Home Mortgage is a separate institutional mortgage company, and independently qualifies as an institutional lender under Magnolia's Declaration. Therefore ASC, as successor in interest to Fremont, is the holder of the institutional mortgage loan and is entitled to the same priority interest granted to Fremont in Paragraph 20 of the Declaration.

Lastly, Magnolia argues that, even if the Court finds that its lien is subordinate to ASC's interest, its lien may not be stripped because Paragraph 20 of the Declaration prohibits it stating:

> "Sale or transfer of any Lot shall not affect the assessment lien. However, the sale or transfer of any Lot pursuant to mortgage foreclosure or any proceeding in lieu thereof, shall extinguish the lien of such assessments as to payments which became due *prior* to such sale or transfer. No sale or transfer shall relieve the lot from liability for any assessments thereafter becoming due or from the lien thereof.

Magnolia's proposition that a sale of the Property to a new owner would protect its lien is of no moment in this case. Magnolia's HOA lien results from past-due assessments accruing prior to the Debtor's bankruptcy. The rights of secured creditors such as Magnolia are affected in bankruptcy to the extent their underlying collateral lacks equity.[22] The Bankruptcy Code specifically provides that a wholly underwater claim may be treated as unsecured and stripped.[23]

In conclusion, the Court finds that the mortgage secured by the Debtor's residential property, which was made by Fremont and now is held by Americas Servicing Co., is an institutional mortgage of the kind described in Magnolia's Declaration. This mortgage lien is

---

[21] Doc. No. 22, Exhibit B at 3.
[22] 11 U.S.C. § 506.
[23] 11 U.S.C. § 506. *In re Gloster*, 459 B.R. 200, 206 (Bankr. D.N.J. 2011) (citing *Nobelman* for the proposition that the Bankruptcy Code and applicable governing precedent permit the strip-off of a wholly unsecured junior claim after the application of § 506(a) determines that the claim is completely unsecured).

entitled to priority over Magnolia's lien for assessments under Paragraph 20 of the Declaration. Because the value of the Property is less than the outstanding principal balance of ASC's superior under-secured loan, the Debtor's motion to strip is granted. An order consistent with this memorandum opinion shall be issued.

DONE AND ORDERED in Orlando, Florida, on January 17, 2013.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge